UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

AMERICAN HALLMARK INSURANCE
COMPANY OF TEXAS,

    Plaintiff,

v.                                                                                                  No. 20-0061 MV/SMV

MARIA AGUIRRE and JOHN DOE, as the
Personal Representative of the Estate of George
Carbajal,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

THIS MATTER is before the Court on Plaintiff's Motion for Default Judgment [Doc. 12], filed on April 7, 2020. Having reviewed the record, the briefing, and the applicable law, the Court finds Plaintiff's Motion for Default Judgment to be well taken. The Motion, therefore, is granted.

## BACKGROUND

Defendant Maria Aguirre's son, George Carbajal, died following a vehicle accident on May 19, 2019. Doc. 1 at 2. Plaintiff, Aguirre's insurance company, filed its Complaint on January 21, 2020, requesting declaratory relief against Aguirre and one Doe Defendant. *Id.* at 1. Plaintiff

> seeks a declaration that: 1) Maria Aguirre validly rejected uninsured/underinsured ("UM/UIM") coverage, and therefore no coverage exists for the loss; and 2) Hallmark acted in good faith and in compliance with all applicable statutory, regulatory, and common law duties in determining that the death of George Carbajal . . . is not a covered loss.

Doc. 12 at 1.

Defendant Aguirre was personally served with the Summons and Complaint in New Mexico on February 4, 2020. Doc. 4 at 1. Aguirre did not file an answer or otherwise respond to the Complaint within 21 days of service. *See id.*; Fed. R. Civ. P. 12(a)(1)(A)(i) (requiring a defendant to serve its answer within "21 days after being served with summons and complaint"). The Clerk entered Aguirre's default on April 2, 2020. Doc. 10 at 1. To date, Aguirre has not answered or otherwise responded to the Complaint. Plaintiff moved for default judgment against Aguirre on April 7, 2020. Doc. 12.

## DISCUSSION

Before entering default judgment, the Court must assure itself that it has jurisdiction over the subject matter and the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). Additionally, the Court must assure itself that Plaintiff has stated a claim upon which relief may be granted. *Bixler v. Forester*, 596 F.3d 751, 762 (10th Cir. 2010).

The Court finds that it has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because (1) Plaintiff, a citizen of Texas, is a citizen of a different state than Aguirre, a citizen of New Mexico, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a) (2018); *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008) (disregarding the citizenship of any doe defendants); Doc. 1 at 1–2. The Court has personal jurisdiction over Aguirre because she was personally served with process in New Mexico pursuant to Rule 4 of the Federal Rules of Civil Procedure. Doc. 4 at 1.

The Court next must determine whether Plaintiff has stated a claim for declaratory relief. *See Bixler*, 596 F.3d at 762. Due to Aguirre's default, the facts asserted in Plaintiff's Complaint are taken as admitted. *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2005). The

Court adopts the facts as stated in Plaintiff's Complaint and reiterated in the Motion. Once default is entered, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler*, 596 F.3d at 762 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998)). "There must be a sufficient basis in the pleadings for the judgment entered." *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Plaintiff seeks default judgment on two counts: first, that Aguirre validly rejected UM/UIM coverage, meaning that no coverage exists for Aguirre's claim; and second, that Plaintiff denied Aguirre's claim in good faith. Doc. 12 at 6. The Court first will analyze whether Aguirre validly rejected UM/UIM coverage.

The New Mexico Supreme Court has held that in order "to effectuate the policy of expanding UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly* and *intelligently act* to reject it before it can be excluded from a policy." *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 16, 147 N.M. 678 (citing *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶¶ 8–9, 111 N.M. 154). Under New Mexico law, every automobile liability policy issued in the state is read to contain UM/UIM coverage in an amount equal to liability coverage limits unless an insurer: (1) offers the insured UM/UIM coverage equal to the policy's liability limits; (2) provides information on the premium costs corresponding to the levels of available UM/UIM coverage; (3) obtains a valid written rejection of UM/UIM coverage equal to the liability limits; and (4) meaningfully incorporates such a rejection into the policy delivered to the insured. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶¶ 21–30, 149 N.M. 162.

*Jordan* requires that an insurer offer the insured UM/UIM coverage in an amount equal to the policy's liability limits and provide the insured the corresponding premium charge for that maximum level of UM/UIM coverage. *Id.* ¶ 21. The insured must also be provided with the premium costs for any other levels of UM/UIM coverage offered to the insured, including the minimum amount of coverage allowed by NMSA 1978, § 66-5-301(A). *Id.* In addition, the insured must be informed that she has the right to reject UM/UIM coverage altogether. *Id.* In setting forth these requirements, *Jordan* recognized that providing the insured with "a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision about the level of UM/UIM coverage he or she wants to purchase and can afford and will minimize uncertainty in litigation with regard to the coverage that the insured has obtained." *Id.*

For a rejection of UM/UIM coverage to be valid, it not only must follow a meaningful offer of coverage to the insured, but it also must be in writing. *See id.* ¶ 18; *Marckstadt*, 2010-NMSC-001, ¶¶ 21–23. The requirement that a rejection be in writing "furthers the policy of expanding UM/UIM coverage by assuring that the insured is sufficiently informed before rejecting coverage, alerting the insured to the importance of the decision, and providing clear evidence of a decision to reject, reducing litigation after the fact." *Marckstadt*, 2010-NMSC-001, ¶ 21.

Furthermore, the New Mexico Administrative Code requires that such rejection "be endorsed, attached, stamped, or otherwise made a part of the policy of bodily injury and property damage insurance." 13.12.3.9 NMAC. This requirement serves the purpose of "ensur[ing] that the insured has affirmative evidence of the extent of coverage" because "[u]pon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy

at home, an individual may well reconsider his or her rejection of [UM/UIM] coverage." *Romero*, 1990-NMSC-111, ¶ 9.  The provision of "affirmative evidence of the rejection of the coverage comports with a policy that any rejection of coverage should be knowingly and intelligently made," and any insured "rejecting such coverage should remain well informed as to that decision." *Id.*

An insured's written rejection need not be physically attached to the policy in order for the rejection to be valid. *See Marckstadt*, 2010-NMSC-001, ¶ 4.  However, the rejection must somehow be meaningfully incorporated into the policy to be valid. *Jordan* held that incorporating the rejection into a policy by inclusion on the declarations sheet meets the requirement that "[t]he insurance policy delivered to the insureds . . . expressly state that UM/UIM coverage had been rejected." 2010-NMSC-51, ¶ 32.  The *Jordan* court found that "[a]lthough the declarations page sent to [the plaintiffs] listed the amounts of liability and UM/UIM coverages provided by the policies, 'the pages did not contain specific references to Plaintiffs' rejection of UM/UIM coverage' and therefore did not satisfy 13.12.3.9 NMAC." *Id.*  The court held the defendants "could have incorporated the rejection into the policy by clearly stating on the declarations page that UM/UIM coverage equal to the policies' liability limits had been rejected." *Id.*; *see also Romero*, 1990-NMSC-111, ¶ 8 ("The rejection [of UM/UIM coverage] must be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived."); *Vigil v. Rio Grande Ins. of Santa Fe*, 1997-NMCA-124, ¶ 7, 124 N.M. 324.

Based on the facts and supporting attachments adduced in the Complaint and the Motion, the Court finds that Aguirre validly rejected UM/UIM coverage and the rejections were made part

of Aguirre's insurance policy via the Endorsement Declarations.  Doc. 1 at 5–6.  The Court finds that Plaintiff adequately delivered the complete insurance policy to Aguirre and offered coverage "up to [her] liability coverage limit." *Id.* at 2.  Aguirre had a meaningful opportunity to consider her decision with respect to UM/UIM coverage, she rejected that coverage in writing, and that rejection is valid under New Mexico law.  *Id.* at 2–5.  Therefore, no UM/UIM coverage exists under the insurance policy procured by Aguirre.

Next, the Court determines whether Plaintiff denied the claim in good faith.  Before Plaintiff filed this lawsuit, Aguirre, through her then-counsel, threatened to sue it for bad faith and for a violation of the New Mexico Unfair Claims Practices Act if Plaintiff did not pay the disputed claim.  *See id.* at 8; Doc. 12-5 at 2–3.  To date, Aguirre has not brought such a claim.  The Court finds, as previously noted, that no UM/UIM coverage exists under the insurance policy procured by Aguirre.  The Court further finds that Plaintiff timely and appropriately investigated the claim and denied the claim in good faith.  Doc. 1 at 7–8.

The Court concludes that, based on the allegations in the Complaint, Defendant Aguirre validly rejected UM/UIM coverage, no UM/UIM coverage exists in this matter, Plaintiff validly denied coverage, and Plaintiff acted in good faith and in compliance with its duties and responsibilities when evaluating and denying the claim.  The Complaint therefore states a claim for declaratory relief, and the Court will grant Plaintiff's Motion for Default Judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Default Judgment [Doc. 12] is **GRANTED**. A formal judgment will be filed contemporaneously with this order.

DATED this 10th day of September 2020.

_____
MARTHA VAZQUEZ
United States District Judge